IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DENZEL NICKERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-721-GMS |
| | ) | |
| STEVEN WESLEY, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

---

Denzel Nickerson. *Pro se* petitioner.

Elizabeth R. McFarlan, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

---

**MEMORANDUM OPINION**

August 25, 2015
Wilmington, Delaware

---

[1] Warden Steven Wesley replaced Warden Phil Morgan, an original party to the case. *See* Fed. R. Civ. P. 25(d).

Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Denzel Nickerson ("Nickerson"). (D.I. 3) For the reasons discussed, the court will deny the petition.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Shortly after 4:00 p.m. on July 17, 2010, Wilmington Police Patrolwoman Kecia Rosado responded to a person with a gun complaint at East 27th Street and Bowers Street in the City of Wilmington, Delaware. (D.I. 1 at 2) The call from the police dispatcher identified the suspect as an African-American male wearing a brown striped shirt and brown shorts and holding a large .45 caliber handgun. *Id.*

When Officer Rosado arrived, she observed Nickerson, who matched the description broadcast. (D.I. 16 at 3) As she entered the 1300 block of East 27th Street in her marked police car, the officer saw Nickerson on the south side of the street standing with approximately eight other males. When Nickerson saw Officer Rosado, he quickly turned away and began walking eastbound on East 27th Street toward Bowers Street in an "awkward manner" – he put his cell phone to his ear and then bent forward at the waist, almost at a forty-five degree angle, keeping his back to the police officer. Nickerson continued walking away from Officer Rosado, while looking over his right shoulder approximately five times. *Id.*

Officer Rosado called to Nickerson to stop, but he did not. (D.I. 16 at 3) As other officers approached from the opposite direction, Nickerson stopped walking and turned toward Officer Rosado exclaiming, "What, I'm talking to my mom?" It was then that Officer Rosado saw a bulge in Nickerson's front waistband showing through his shirt. Recognizing that it appeared he had a gun, the officer immediately ordered Nickerson to the ground. When she

patted him down, Officer Rosado could feel the large, hard metal object in Nickerson's front waistband. She then lifted the front of Nickerson's shirt and discovered a large, silver handgun with a brown grip pad on the handle in his waistband. It was a .45 caliber Kimber Team Match II, semi-automatic handgun with one bullet in the chamber and seven in the magazine. *Id.*

A further search of Nickerson revealed cash and a small black plastic bag that was knotted at the top. (D.I. 16 at 3) There were four individual bundles within the black plastic bag, and each had a rubber band around it. One of the bundles contained eight small clear plastic bags with a blue rubber band tied around it, and the other three bundles each contained thirteen small clear plastic bags with black rubber bands tied around them. All together, there were forty-seven small clear ziplock bags that contained a light blue wax paper bag in each, and each bag had a hand printed on it with a thumb pointing up and the letters "D.O.A." stamped in blue ink. Each contained heroin. *Id.* at 3-4.

Nickerson was arrested and subsequently indicted for, *inter alia*, possession with intent to deliver heroin, possession of heroin within 1,000 feet of a school, possession of heroin within 300 feet of a place of worship, possession of a firearm during the commission of a felony, carrying a concealed deadly weapon, possession of a firearm by a person prohibited, resisting arrest, and loitering. (D.I. 16 at 1) Because of a collateral violation of probation in another case, this matter was assigned to the Superior Court Fast Track calendar. (D.I. 18, *State v. Nickerson*, IN10-08-2311R1, Commr's. Rep. & Rec. at 3 (Del. Super. Ct. Mar.12, 2012) The case proceeded to final case review, and Nickerson rejected the State's plea offer. *Id.* Trial was scheduled to start on February 16, 2011. *Id.* However, on February 16, 2011, Nickerson pled guilty to possession of a firearm during the commission of a felony. (D.I. 16 at 1) The State

entered a *nolle prosequi* to the rest of the charges. *Id.* The plea colloquy transcript reveals that Nickerson admitted to possession of a .45 caliber semiautomatic handgun while engaged in felony drug possession and also confirmed that he was dissatisfied with his counsel's representation. (D.I. 18, Plea Colloquy Transcript dated Feb. 16, 2011, at 7-8, 11-12)

The Superior court immediately sentenced Nickerson to the minimum mandatory term of five years at Level V, followed by six months at Level IV. (D.I. 16 at 2) Nickerson did not appeal his conviction and sentence. *Id.*

On June 21, 2011, Nickerson filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") asserting the following three grounds for relief: (1) defense counsel failed to file a motion to suppress evidence; (2) defense counsel failed to request the tape of the informant and the police dispatcher; and (3) defense counsel failed to investigate or pursue Nickerson's contention that his arrest was due to profiling. (D.I. 18, Motion for Postconviction Relief) A Superior Court Commissioner issued a Report and Recommendation that the Rule 61 motion be summarily dismissed. (D.I. 18, *State v. Nickerson*, IN10-08-2311R1, Commr's. Rep. & Rec. (Del. Super. Ct. Mar. 12, 2012)) The Superior Court adopted that recommendation and summarily dismissed the motion on March 29, 2012. (D.I. 18, *State v. Nickerson*, IN10-08-2311R1, Order. (Del. Super. Ct. Mar. 29, 2012)) Nickerson did not appeal that judgment.

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).

3

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner

4

permitting the court to consider the claims on their merits. *Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.

5

2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### III. DISCUSSION

Nickerson's timely filed petition asserts four grounds for relief grounds for relief: (1) defense counsel provided ineffective assistance by failing to file a suppression motion challenging his initial detention; (2) defense counsel was ineffective for failing to request the 911 dispatch tapes to show his prosecution was the result of "profiling"; (3) defense counsel was ineffective because he demonstrated a lack of interest in the case; and (4) the police violated his Fourth Amendment rights because they lacked a reasonable articulable suspicion to stop him and lacked probable cause to arrest him. (D.I. 3)

#### A. Claims One, Two, and Three: Ineffective Assistance of Counsel

Although Nickerson presented claims one, two, and three in his Rule 61 motion, he did not appeal the Superior Court's denial of that motion to the Delaware Supreme. Consequently, Nickerson did not exhaust state remedies for his first three claims. At this juncture, Nickerson would by time-barred by Delaware Superior Court Criminal Rule 61(i)(1) from presenting these issues to the Delaware state courts in a new Rule 61 motion in order to have an opportunity to appeal any adverse decision to the Delaware Supreme Court. Consequently, his first three claims

6

are procedurally defaulted, meaning that the court cannot review their merits absent a showing of cause and prejudice, or that petitioner is actually innocent.

Nickerson attempts to establish cause by blaming the Superior Court for informing him during his plea colloquy that it would be useless for him to pursue appellate relief through the Delaware Supreme Court. (D.I. 4 at 3) However, in Delaware, ineffective assistance of counsel claims cannot be brought on direct appeal, but must be presented to the Superior Court in a Rule 61 motion. Notably, Nickerson actually did present the instant three claims in his Rule 61 motion. His procedural default is due to the fact that he did not present these three claims to the Delaware Supreme Court on postconviction appeal, not that he did not present them on direct appeal. Given these circumstances, Nickerson has failed to demonstrate cause sufficient to excuse his procedural default.

In the absence of cause, the court will not address the issue or prejudice. Additionally, the court cannot excuse Nickerson's default under the miscarriage of justice exception to the procedural default doctrine, because Nickerson has not provided new reliable evidence of his actual innocence.

Accordingly, the court will deny claims one through three as procedurally barred from federal habeas review.

### B. Claim Four: Fourth Amendment Violation

In his fourth claim, Nickerson contends that all of the evidence seized should have been suppressed because the police officer's stop and arrest was the result of racial profiling and not based on any citizen's complaint or police dispatch. The State properly argues that the court is barred from considering the merits of this Fourth Amendment argument under the doctrine established in *Stone v. Powell*, 428 U.S. 465, 494 (1976). In *Stone*, the Supreme Court held that

7

federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate Fourth Amendment claims in the state courts. *Id.*; *see Wright v. West*, 505 U.S. 277, 293 (1992) ("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

Delaware Superior Court Criminal Rule 41 provides a defendant with a mechanism for filing a pre-trial motion to suppress evidence and raise Fourth Amendment issues. In this case, Nickerson did not file a suppression motion pursuant to Rule 41. To the extent Nickerson alleges that the failure to file a Rule 41 motion was due to counsel's ineffective assistance, counsel's alleged inaction has no bearing on the "full and fair opportunity" analysis. *See Fogg v. Phelps*, 579 F. Supp. 2d 590, 604 (D. Del. 2008). In other words, the fact that Nickerson could have presented the instant Fourth Amendment claim to the Superior Court under Delaware Rule 41 precludes habeas review of the claim. Accordingly, the court will deny claim four as barred by *Stone*.

8

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has concluded that Nickerson's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Nickerson's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.